IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL R. D'ALESSANDRO,  \*
      Plaintiff,
                                  \*
v.                                        CIVIL ACTION NO. PJM-08-2841
                                  \*
THE COUNTY OF MONTGOMERY, et al.,[1]
      Defendants.                   \*
\*\*\*\*\*\*

## MEMORANDUM OPINION

Defendant Montgomery County has moved for dismissal or summary judgment against Plaintiff Michael R. D'Alessandro. Paper No. 10. Plaintiff has not filed a response.[2] Paper No. 21. No hearing is necessary to resolve the issues before the Court. *See* Local Rule 105.6 (D. Md. 2008). The County's Motion for Summary Judgment will be **GRANTED**.[3]

---

[1] Plaintiff also sues John Doe, Richard Roe, and Defendants Nos. 1-10. While these anonymous Defendants have obviously not been served, for the reasons that follow, Plaintiff's claims against them shall nevertheless be dismissed.

[2] Pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on March 4, 2009, Plaintiff was notified that the County had filed a dispositive motion, the granting of which could result in the dismissal of this action. Paper No. 11. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of the case or in the entry of summary judgment without further notice of the Court. *Id.*
    Plaintiff has filed a Motion for Appointment of Counsel (Paper No. 12) which is **DENIED**. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 779 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984).
    The Court finds from its review of the Complaint that Plaintiff is able to adequately articulate the facts and grounds for relief in the instant matter without notable difficulty. Furthermore, the Court concludes that the complaint is not of undue complexity. Therefore, in the exercise of its discretion, the Court denies Plaintiff's request for appointment of counsel.

[3] Accordingly, the County's Motion to Dismiss is **MOOT**.

**Standard of Review**

**A.  Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.  *Id*. at 1969.  The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.    Motion for Summary Judgment**

Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
>
> Not every factual dispute will defeat the motion.  As the Supreme Court has stated, [b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc*., 840 F.2d 236, 240 (4th Cir. 1988). The court must "view the facts and draw reasonable inferences in a light most favorable to the nonmoving party," *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1993), but it must also abide by its affirmative obligation to ensure that factually unsupported claims and defenses to not proceed to trial. *See Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-23 (1986)). With this standard in mind, the Court now examines Plaintiff's claims.

**Background**

Plaintiff alleges that on October 14, 2008, he was transported by two deputy sheriffs from Newark, New Jersey to the Montgomery County, Maryland, Detention Center ("MCDC"). Plaintiff states that he advised the sheriffs that he was under the care of a urologist, and advised them that he needed to stop to use the bathroom to urinate. He claims the sheriffs refused to stop, forcing him to hold his urine so long that he passed out and urinated on himself. Paper No. 1.

Upon arriving at MCDC Plaintiff advised a nurse of his medical conditions. Plaintiff states he was then transported to a cell where he passed out. He was placed on a stretcher and transported to Shady Grove Adventist Hospital where he was shackled to the bed, causing him "agony." He was seen by a cardiologist on October 15, 2008, who advised him his tests were fine and he would be discharged . The cardiologist then consulted with Defendant Dr. Hasmet[4] who told Plaintiff he could not be discharged, as additional testing was required. Plaintiff signed a request to be released against medical advice after Hasmet agreed Plaintiff could receive the additional testing on an out-

---

4 The Clerk shall be directed to amend the docket to reflect the correct name of Defendant.

patient basis. Paper No. 1. Plaintiff was again interviewed by Dr. Hasmet on October 16, 2008, and his medications increased; however, he was not given that morning's medication by the nurse. Paper No. 1. On October 17, 2008, Plaintiff asked to be discharged from the medical cell. Dr. Hasmet refused the request, advising Plaintiff that he needed additional medical testing. *Id*.

Plaintiff was returned to MCDC and placed in a four- man cell on the medical unit. He claims he was "subjected to intense sensory bombardment from numerous lights kept on from 4 a.m. – 10 p.m.." Paper No. 1. He further alleges that the temperature in the room was very cold, and he wore two pairs of socks and two mechanics uniforms for warmth. He states that the air vents were dirty and there was no cleanser/disinfectant for the toilet and sink. He also claims he was unable to call his family collect and that requests for a legal form, access to the law library, and his eye glasses were ignored. Paper No. 1.

**Analysis**

**A.      Claim against Sheriffs**

Plaintiff names "Montgomery County Sheriff" as a Defendant under the false assumption that the Sheriff's Department is a county agency. Maryland law holds otherwise. County sheriffs and deputy sheriffs are officials and/or employees of the State, not the County. *Rucker v. Harford County,* 558 A.2d 399, 402 (1989). A deputy sheriff exercises the same authority as the sheriff and is likewise a State official/employee. *(Id)*. Because sheriffs and deputy sheriffs are not county employees, Montgomery County cannot be held liable for the alleged tortious conduct of Montgomery County Sheriff's Department employees. Therefore, Plaintiff has failed to state a claim upon which relief can be granted against "Montgomery County Sheriff."


**2.      Denial of Medical Care**

Plaintiff's claim against Shady Grove Adventist Hospital shall also be dismissed. Plaintiff

cannot proceed against the hospital and its employees under the civil rights statute, 42 U.S.C. § 1983, unless they can be deemed to have acted under color of state law, or unless it can be shown that they willfully acted jointly with state actors in depriving Plaintiff of his rights. *See Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *see also DeShaney v. Winnebago County D.S.S.*, 489 U.S. 189, 195 (1989) (Due Process Clause of Fourteenth Amendment prohibits government from depriving any person of life, liberty or property without due process of law but does not require government to guard the protected interests of its citizens from invasion by private actors). That Plaintiff received treatment at Shady Grove Adventist Hospital under the orders of the medical provider at MCDC does not make the hospital and its personnel agents of the state. *See Dennis,* 449 U.S. at 28.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.[5] *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). To state a claim for denial of medical care, Plaintiff must demonstrate that the actions or inactions of Defendants amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified

---

[5]It appears Plaintiff was a pre-trial detainee at the time the actions of which he complains occurred. As a pretrial detainee, his right to adequate medical care is evaluated under the Due Process Clause of the Fourteenth Amendment. *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Notwithstanding this standard of review, the Fourth Circuit has held that the deliberate indifference standard set forth in *Estelle v. Gamble* is applicable to pretrial detainees. *See Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Whisenant*, 739 F.2d at 164.

access to health care).   Proof of an objectively serious medical condition, however, does not end the inquiry.  The second component of proof requires "subjective recklessness" in the face of the serious medical condition.  *Farmer*, 511 U.S. at 839– 40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer,* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability  "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  *Farmer*, 511 U.S. at 844.  Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris* 240 F. 3d 383 (4th Cir. 2001), citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). In determining whether an alleged deprivation of medical care amounts to a constitutional violation, courts must consider the severity of the medical problem, the potential for harm if medical care was denied or delayed, and whether such harm actually resulted from the lack of medical attention.  *See Burns v. Head Jailor of LaSalle County*, 576 F. Supp. 618, 620 (D.N. Ill. 1984) (citation omitted).

Plaintiff complains that Dr. Hasmet ordered additional tests for a cardiac condition that were not ordered by the resident cardiologist at Shady Grove Adventist Hospital.  He also alleges that after Dr. Hasmet changed his medication, an unidentified Nurse failed to provide same.  Lastly, he claims that Hasmet refused to permit Plaintiff to discharge himself from the medical unit.  Paper No. 1.  Based on Plaintiff's allegations, the Court cannot find that Hasmet was deliberately indifferent to

Plaintiff's serious medical needs. To the contrary, Hasmet responded to Plaintiff's medical needs and ordered testing of Plaintiff's condition and an adjustment of his medication. Moreover, Plaintiff has failed to allege, much less demonstrate, that he was injured as a result of any action or inaction on the part of Hasmet. At most, Plaintiff merely disagrees with the course of treatment provided. Such disagreements do not provide the basis for a federal complaint under 42 U.S.C. § 1983. *See Russell v. Sheffer*, 528 F. 2d 318 (4th Cir. 1975). As such, Plaintiff's complaint against Hasmet shall be dismissed.

### 3.     **Conditions of Confinement**

The Court considers the County's argument that Plaintiff's claim concerning the conditions of his confinement should be dismissed due to Plaintiff's failure to exhaust available administrative remedies. Paper No. 10.

The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion provision plainly extends to Plaintiff's allegations. Unless, therefore, he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense, his claim must be dismissed. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners must pursue administrative

grievances until they receive a final denial of their claim, appealing through all available stages in the administrative process. *Chase*, 582 F.Supp.2d at 530; *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In his Complaint, Plaintiff states that he filed a grievance concerning the conditions of his confinement but that it had not been ruled upon at the time he filed the instant case. Paper No. 1. This definitively establishes that Plaintiff failed to fully exhaust his administrative remedies with regard to his conditions claim. Accordingly, Plaintiff's claims concerning the conditions of his confinement shall be dismissed.

**4.      Motion for Injunctive Relief**

In his Motion for Temporary Restraining Order (Paper No. 13), Plaintiff asks the Court to enjoin the County from disposing of his personal property.

In order to obtain injunctive relief under Fed. R. Civ. P. 65, Plaintiff must demonstrate: (i) the likelihood he will be irreparably harmed if the preliminary injunction is denied; (ii) the likelihood that defendant will not be harmed if the requested relief is granted; (iii) the likelihood that plaintiff will succeed on the merits; and (iv) that the public interest will be served if the injunction is

granted.  *See Blackwelder Furniture Co. v. Selig Manufacturing Co*., 550 F.2d 189, 195-96 (4th Cir. 1977); *Yakus v. United States*, 321 U.S. 414 (1944).

Code of Maryland Regulations 12.02.17.03 directs the Department of Corrections to establish procedures for the return of an inmate's personal property to him upon his release, and for obtaining a receipt from the inmate for the return of his property.  MCDC has established a procedure in compliance with this directive, which provides as follows:

> Upon your release you are expected to pick up all of your personal property from MCDC at 1307 Seven Locks Road, Rockville, Maryland 20854.  Unclaimed personal property will be held for 30 days after your release date, and if unclaimed after 30 days, the property will be disposed of (refer to COMAR, 12-03, Disposition of Inmate Personal Property.)

Paper No. 15, Ex. 1.

The policy is contained in the Inmate Guide Book provided to each inmate housed at MCDC.  *Id.*, Ex. 1 and 2. Plaintiff was advised of the policy regarding disposition of inmate property upon his arrival and release from MCDC.  *Id*., Ex. 2. He was further advised of the policy by correspondence from Deputy Warden Malagari dated November 4, 2008 and December 15, 2008, wherein he was further counseled that if he could not retrieve the property he could designate someone to retrieve the property on his behalf.  *Id.,* Ex. 2-4.  He was again advised of the policy by letter from counsel for MCDC on February 4 and 20, 2009.  *Id*., Ex. 5.  The County maintains it is not feasible for it to ship property to inmates who have left the institution, inasmuch as they house between 10-11,000 inmates each year.  *Id*., Ex. 2.

Plaintiff's request for a temporary restraining order will be rejected.  His motion does not clearly establish that immediate and irreparable injury, loss, or damage would result if the requested

relief is not granted or that he is likely to prevail on this claim. In short, the conditions set out by Plaintiff do not warrant immediate emergency relief. Plaintiff shall make arrangements within 14 days of the date of this Order to retrieve his personal property; otherwise, the County may dispose of the property in accordance with its policy.

**Conclusion**

In light of the foregoing, Plaintiff's Complaint against Defendants Montgomery County Sheriff, Dr. Hasmet, and Shady Grove Adventist Hospital is **DISMISSED**. Defendant Montgomery County's Motion for Summary Judgment shall be **GRANTED**. Its Motion to Dismiss is **MOOT**. Plaintiff's Motion for Temporary Restraining Order is **DENIED**.

A separate Order follows.

August 14, 2009

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE